

**Department of the Treasury**
**Internal Revenue Service**
**TEGE - ITG**
2970 Market Street
MS 2-D17-152
Philadelphia, PA 19104

East Central Community College
P O Box 129
Decatur, MS 39327-0129

Date:
02/04/2025
Person to contact:
Name: Adrienne Mason
Employee ID number: 10005061719
Telephone: 267-466-2020
Fax: 866-543-2897
Hours: 8:00AM - 4:30PM
Taxpayer ID number:

Form:
941
Tax period(s) ended and Claim amount(s):
March 31, 2021

Response due date:
02/19/2025

Dear: East Central Community College

We examined your adjusted or claim for refund return and propose:

Full disallowance, as shown in the enclosed examination report(s), Form 4666, *Summary of Employment Tax Examination,* Form 4668, *Employment Tax Examination Change Report,* or Form 4667, *Examination Changes - Federal Unemployment Tax,* if applicable. You can find an explanation of why we didn't allow your claim in full below or on the attached Form 886-A, *Explanation of Items.* If you accept our findings, sign and return the enclosed Form 2297, *Waiver of Statutory Notification of Claim Disallowance,* and Form 3363, *Acceptance of Proposed Disallowance of Claim for Refund or Credit,* in the enclosed envelope.

**Reason for disallowance**
See attached Form 886-A for reason.

If you disagree with our decision, you can request a meeting or telephone conference with the supervisor of the person identified in the heading of this letter. If you still disagree with our decision, you can request an Appeals conference by filing a small case request or a formal written protest (depending on the amount you owe). The enclosed Publication 5, *Your Appeal Rights and How To Prepare a Protest If You Don't Agree,* explains how to request an Appeals conference.

If you don't respond by the date listed in the heading of this letter, we'll process your case based on the adjustments shown in the enclosed examination report(s) and Form 886-A or the explanations given above.

Letter 5376 (4-2014)
EXHIBIT TurAbel66176X

EXHIBIT B - IRS DISALLOWANCE LETTER &
EXPLANATION OF ITEMS

If you have questions, you can contact the person whose name and telephone number are listed at the top of this letter.

Thank you for your cooperation.

Sincerely,

Adrienne Mason
Revenue Agent

Enclosure(s):
Form 886-A
Form 4666
Form 2297
Form 3363
Publication 1
Publication 5

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |

### Employee Retention Credit (ERC):

| Tax Periods Under Examination | ERC Per Return | ERC Amount as Corrected | ERC Amount Disallowed (Allowed) |
|---|---|---|---|
| 202103 | $1,460,717.60 | $1,455,800.44 | $1,460,717.60 |
| | | | |

### Issues:

1) Whether East Central Community College (hereafter referred to as Taxpayer) is entitled to the Employee Retention Credit (ERC) for the amounts claimed on Form 941-X for the calendar quarter ending March 31, 2021.

2) Whether a more than a nominal portion of the taxpayer's business operations were fully or partially suspended in calendar quarter ending March 31, 2021, due to a government order.

3) Whether the taxpayer is an eligible employer or is a whole-owned instrumentality of a State within the meaning of Internal Revenue Code (Code) section 3121(b)(7)(F).

4) Whether the taxpayer paid qualified wages (including qualified health plan expenses) to their employees in amounts of $2,079,714.92 for the calendar quarter ending March 31, 2021.

### Facts:

East Central Community College is a public institution that offers two-year higher education to the residents of a five-county area located in east central Mississippi. The main campus is in Decatur, Mississippi and has been in existence since 1928. The school currently has an enrollment of over 2,400 students.

Taxpayer employed approximately 225 employees in 2021 and filed 299 Forms W-2 in the 1st quarter of 2021.

The college is governed by a 30-member Board of Trustees, consisting of 6 individuals from the five counties that the college serves. Five members are appointed by the county Board of supervisors and the local county superintendent serves as the sixth member from each county.

### Issue -Full or Partial Suspension of Operations

Following school closures which occurred in Spring 2020 in response to the Covid- 19 pandemic, the Governor of Mississippi issued executive orders to mitigate the spread of Covid-19 while reopening the

| Catalog Number 20810W | Page 1 of 12 | www.irs.gov | Form **886-A** (Rev. 5-2017) |
|---|---|---|---|

**EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS**

**EXHIBIT A -3**

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |

state for commerce and business throughout the remainder of 2020 and continued to through 2021. The Safe Recovery Orders outlined how the college could conduct in person classes in addition to the distance learning that was put in place as a result of campus closures in Spring 2020.

The taxpayer claimed entitlement to ERC as result of a full or partial suspension of its business operations due to governmental orders related to Covid-19. The taxpayer claimed that the government orders had a significant impact on its business and interrupted the college operations, because they were unable to conduct recruiting events, were subject to capacity restrictions and had to implement strict social distancing protocols which created operational inefficiencies.

The college's primary method of operation is to provide in-person, on campus education. As a result of campus closures learning was moved to distance learning and remote operations. However, the school gradually re-opened during school year 2020-2021. In-person, on campus operations reopened with some restrictions. These restrictions included limitations on attendance capacity at both indoor and outdoor events hosted by the school.

Although an employer may close its workplace due to a governmental order, if the employer is able to continue comparable operations following the closure by providing options such as telework or teaching in a virtual learning or independent study context, then the employer is generally not considered to have a full or partial suspension of business operations due to a governmental order.

Per the Executive Order 1460 issued by the State of Mississippi on March 19, 2020, public schools in the State of Mississippi were ordered to close. Executive Order 1487 issued May 22, 2020 allows for the reopening of school weight rooms and training facilities with social distancing and health protocols. Executive Order 1491 issued on June 1, 2020, allowed for team practices and outdoor sports complexes to reopen. These orders were replaced by Executive Order 1492 – Safe Return Order effective June 1, 2020, which allowed for restart of community activities which included business operations, travel, outdoor recreational activities, and indoor recreational activities. All these orders and their restrictions were rescinded and repealed by January 1, 2021. By January 1, 2021, Executive Order 1535 – Safe Recovery Order was in effect. This order required face coverings to be worn in public spaces when unable to maintain 6 ft distance when not with persons of same household, capacity restrictions for group gatherings in reception halls, conference centers, sports complexes and outdoor arenas.

In conclusion, we determined the Taxpayer was able to return to its business operations, providing education to residents in the five counties which they serve. The most restrictive Executive Orders which required schools to close and residents to stay at home were no longer in effect as of June 15, 2020, therefore they have failed to substantiate entitlement to ERC based upon a full or partial suspension of its business.

<u>**Issue -Eligible Employer to claim the Employee Retention Credit (ERC)**</u>

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |

In general, for employment tax purposes, the Internal Revenue Service considers six factors in determining whether an organization is a government instrumentality. The six factors are:

1. **Whether the organization is used for a governmental purpose and performs a governmental function.**

*This factor supports a government instrumentality finding. The college receives most of its funding from the State of Mississippi appropriation and the counties of the residents who are full time students which the college serves.*

2. **Whether performance of the organization's function is on behalf of one or more States or political subdivisions.**

*This factor supports a government instrumentality finding. For this factor, "In determining whether an entity is administered by individuals who are responsible to public officials or the general electorate, the 'relevant inquiry' is whether a majority of the individuals who administer the entity—the governing board and executive officers—are appointed by and subject to removal by public officials." East Central Community College serves the residents of the five surrounding counties and the Board of Trustees are appointed by the County Board of Supervisors, who is a public official.*

3. **Whether there are any private interests involved, or whether the States or political subdivisions involved have the powers and interests of an owner.**

*This factor does not support a government instrumentality finding. East Central Community College receives funding from the state, but the state does not have powers and interests of an owner. Additionally, it is only one several funding sources for the college. Ultimately control of the college rests with the Board of Trustees.*

4. **Whether control and supervision of the organization is vested in a public authority or authorities**

*This factor does not support a government instrumentality finding. East Central Community College receives most of its funding from state and local governments, but the control and supervision of the college does not vest in the state or local counties.*

5. **If express or implied statuary or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists.**

*This factor is neutral. I was unable to find information to substantiate this factor.*

6. **The degree of financial autonomy and the source of its operating expenses**

*This factor is neutral. East Central Community College received most of its funding from the state of Mississippi and the surrounding counties however the overall financial responsibility of the college is in the hands of the Board of Trustees.*

We determined that two factors support the finding that the college is a government instrumentality, while two others weigh against such a finding, and two are neutral. In conclusion, based on the totality of the circumstances, it does appear that the college is a government instrumentality.

EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS    EXHIBIT A -5

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |

Another factor, to determine eligibility of an employer to claim ERC, is to analyze the employment relationships per IRC 3121(b) which define employment as any service performed by an employee for the person employing him/her; except that such term shall not include service performed in the employer of a school, college or university, see IRC 3121(b)(10). The taxpayer is a college, or university does meet the definition of eligible employers within meaning of IRC 3121(b), however the taxpayer is considered to be a qualified employer in purpose of claiming ERC.

**Issue -Qualified Wages**

Taxpayer paid wages (taxpayer did not include health plan expenses) to approximately 300 employees for a total amount of $2,699,245.07 in the 1st quarter of the year 2021. The taxpayer provided the payroll records for the periods in question and a calculation of wages which they claimed to be qualified for ERC purposes.

The taxpayer can claim 70% of all qualified wages paid- limited to $10,000 per each quarter, per each employee, if the taxpayer is an eligible employer.

|  | Q1 |
|---|---|
| Wages | $2,699,245.07 |
| ERC Wages | 2,079714.92 |
| Limited to 70% | 1,455,800.44 |
| Non-Refundable | 158,369.64 |
| Refundable | $1,297,460.80 |

The ERC is allowed on qualified wages paid to employees which constitute wages within the meaning of IRC 3121(a) or must constitute qualified health plan expenses properly allocable to an employee in order to fall within the definition of qualified wages.

IRC 3121(a) defines wages for Federal Insurance Contributions Act (FICA) tax purposes as:
- All remuneration for employment
- Including the cash value of all remuneration (including benefits) paid in any medium other than cash,
- With certain specific exceptions

We determined that the taxpayer does meet the definition of a qualify employer within meaning of IRC 3121(b) and wages paid to employees are qualified for purpose of claiming ERC.

**Issue 7- More Than a Nominal**

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | Schedule number or exhibit | |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

For the 1st quarter of 2021, the taxpayer claimed a full or partial suspension of business. The taxpayer stated that more than a nominal portion of its business operations were suspended due to Covid-19 orders from the governmental authorities causing limitations to its normal operations. The taxpayer claimed that it experienced a partial suspension of business operations because they were unable to conduct recruitment, hold sporting events at full capacity and campus closure.

Taxpayer provided the gross receipts data for 2019 to show that impacted functions had a more than nominal impact on the college. For the 1st quarter the taxpayer tried to show the gross receipts in 2021 declined by more than 10% compared to 2019.

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

| | | 2019 Q1 | | 2021 Q1 |
|---|---|---|---|---|
| **Operating Revenues** | | | | |
| Tuition & Fees | $ | 5,859,990.00 | $ | 5,995,275.00 |
| State Operating | $ | 10,205,626.00 | $ | 9,922,807.00 |
| Sales and Services | $ | 120,029.00 | $ | 89,066.00 |
| Grant Proceeds | $ | 22,800.00 | $ | 29,000.00 |
| MISC | $ | 2,796.00 | $ | 26,968.00 |
| Rent | | | | |
| | $ | 16,211,241.00 | $ | 16,063,116.00 |
| **Auxiliary Revenues** | | | | |
| Rent | $ | 84,617.00 | $ | 99,000.00 |
| Food Sales | $ | 1,276,073.00 | $ | 1,182,637.00 |
| Room Fees | $ | 1,077,480.00 | $ | 1,025,650.00 |
| Student Fees | $ | 29,600.00 | $ | 32,850.00 |
| Washer and Dryers | $ | 1,760.00 | $ | 688.00 |
| Textbook Sales | $ | 1,345,420.00 | $ | 1,068,715.00 |
| Merchandise Sales | $ | 321,311.00 | $ | 197,816.00 |
| Vending Commissions | $ | 10,429.00 | $ | - |
| MISC | $ | 10,164.00 | $ | 546.00 |
| | $ | 4,156,854.00 | $ | 3,607,902.00 |
| Total Receipts | $ | 20,368,095.00 | $ | 19,671,018.00 |
| Auxiliary/ Total Revenue | | 20.40865383 | | 18.34120634 |

Total Receipts declined by 10% from 2019 Q1 in 2021 Q1 compared to 2019 Q1

Note: Auxiliary Revenues represent 20% of Total Receipts in 2019 Q1.

Note: Auxiliary Revenues represent 18% of Total Receipts in 2021 Q1.

We determined that taxpayer is not applying the nominal portion analysis correctly. The test to determine which departments or activities of the business represent a nominal or more than a nominal part of operations is based only on 2019 data gross receipts when the business operations were normal. It is not based gross receipts comparative analysis between 2019 and the quarter under examination.

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

Notice 2021-20, 2021-11 I.R.B. 922 provides a safe harbor for determining whether a portion of an employer's business operations will be deemed to constitute a more than nominal portion of its business operations. This safe harbor is only for purposes of the Employee Retention Credit. A portion of the employer's business operations will be deemed to constitute a more than nominal portion of its business if either:

- The gross receipts from that portion of the business operations are not less than 10 percent of the total gross receipts (both determined using the gross receipts of the same calendar quarter in 2019), or

- The hours of service performed by employees in that portion of the business is not less than 10 percent of the total number of hours of service performed by all employees in the employer's business (both determined using the number of hours of service performed by employees in the same calendar quarter in 2019.)

The IRS considers more than nominal to be at least 10% of the total business operations using either one of the two tests listed above. If all parts of the business could operate but the operations had to be modified to operate, then the business is considered partially suspended if they can show, under the facts and circumstances, that the order had more than a nominal effect on the business. The more than nominal effect must be at least a 10% reduction in the business's ability to provide services in the normal course of their business. Changes that alter behavior such as social distancing and wearing masks does not have a more than nominal effect on the business operations.

Notice 2021-20, Q/A-18 provides guidance regarding whether a governmental order that causes the business to modify its operations has a more than nominal effect on operations, is considered to rise to the level of a partial suspension of operations due to a governmental order. Q/A- 18 provides that an employer required by government order as a condition of reopening a physical space for business or service to the public, is not considered to have a full or partial suspension of its operations due to a governmental order unless the taxpayer can demonstrate that the modification had a more than nominal effect on the employer's business operations.

The correct application of the safe harbor shows that the governmental orders in effect during the period of this claim shows that the effected portions of the business are not greater than 10% of the gross receipts for 2019.

| Catalog Number 20810W | Page 7 of 12 | www.irs.gov | Form **886-A** (Rev. 5-2017) |
|---|---|---|---|

EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS

**EXHIBIT A -9**

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

**Operations impacted by orders in effect from January 1, 2021 to March 31, 2021**

| | 2019 Q1 | 2019 Q1 |
|---|---:|---:|
| **Operating Revenues** | | |
| Tuition & Fees | $ 5,859,990.00 | 28.77% |
| State Operating | $ 10,205,626.00 | 50.11% |
| Sales and Services | $ 120,029.00 | 0.59% |
| Grant Proceeds | $ 22,800.00 | 0.11% |
| MISC | $ 2,796.00 | 0.01% |
| | $ 16,211,241.00 | |
| **Auxiliary Revenues** | | |
| Rent | $ 84,617.00 | 0.42% |
| Food Sales | $ 1,276,073.00 | 6.27% |
| Room Fees | $ 1,077,480.00 | 5.29% |
| Student Fees | $ 29,600.00 | 0.15% |
| Washer and Dryers | $ 1,760.00 | 0.01% |
| Textbook Sales | $ 1,345,420.00 | 6.61% |
| Merchandise Sales | $ 321,311.00 | 1.58% |
| Vending Commissions | $ 10,429.00 | 0.05% |
| MISC | $ 10,164.00 | 0.05% |
| | $ 4,156,854.00 | |
| **Total Receipts** | $ 20,368,095.00 | |

In conclusion, we disagree that the modification due to a government order had more than nominal effect on the taxpayer's ability to provide services in the normal course of their business.

The taxpayer did not receive a Payroll Protection Loan or other Covid 19 pandemic related credits for this tax period. The taxpayer is not a member of an aggregated group.

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | Tax Identification Number *(last 4 digits)* | Year/Period ended |

**Law:**

Congress enacted legislation allowing for tax credits for employee retention, qualified sick leave, and qualified family leave provided to employees in response to Covid-19. The initial legislation in March 2020 provided the credits could be claimed for the 2nd, 3rd, and 4th quarters of 2020. Subsequent legislation expanded and amended credits for various periods in 2021.

**Coronavirus Aid, Relief, and Economic Security Act (CARES Act), P.L. 116-136, 134 Stat. 281**, was enacted on March 27, 2020. Under Section 2301 of the CARES Act, certain employers who pay qualified wages to their employees are eligible for an employee retention credit. The Employee Retention Credit (ERC) is a fully refundable tax credit for employers equal to a percentage of qualified wages (including allocable qualified health plan expenses) that Eligible Employers paid their employees.

Per the CARES Act, an Eligible Employer is any employer operating a trade, business, or a tax-exempt organization, but not governmental entities. The Eligible Employer must experience either a full or partial suspension of operations due to a government order due to Covid-19 during any quarter, or a significant decline in gross receipts.
Tax-exempt organizations refer to the definition of gross receipts under Internal Revenue Code (IRC) section 6033 and Treasury Regulations 1.6033-2(g)(4).

**Taxpayer Certainty and Disaster Tax Relief Act of 2020 (Relief Act)** extended the credit under the CARES Act to wages paid through June 30, 2021, with the following amendments and additions:

- Eligible employers were expanded to include certain governmental employers that are organizations described in IRC 501(c)(1) and exempt from tax under IRC 501(a), and colleges or universities or whose principal purposes is to provide medical or hospital care.
- The calendar quarters in 2021, the Relief Act amended the decline in gross receipts to be defined as the quarter where gross receipts are less than 80% of the same quarter in 2019.
- The Relief Act provided an alternative quarter election rule, allowing employers to compare the 4th quarter of 2020 to the 4th quarter of 2019 to determine if they are eligible for the 1st quarter of 2021, based on the decline in gross receipts. In addition, a rule for employers not in existence in 2019 was added to determine whether there was a decline in gross receipts by comparing the calendar quarter in 2021 to its gross receipts in the same calendar quarter in 2020.
- For calendar quarters in 2021, employers with 500 or fewer average full-time employees in 2019, with wages paid to employees for either providing or not providing services can claim 70% of qualified wages, up to $10,000 in wages per employee per quarter.
- For calendar quarters in 2021, employers with greater than 500 average full-time employees in 2019, with wages paid to employees for not providing services can claim 70% of qualified wages, up to $10,000 in wages per employee per quarter.
- The maximum credit increased to $7,000 per employee per quarter in 2021.

For purposes of determining "qualified wages," section 2301(c)(5)(A) of the CARES Act provides that the term "wages" generally means wages as defined in section 3121(a) of the Code and

| Catalog Number 20810W | Page 9 of 12 | www.irs.gov | Form **886-A** (Rev. 5-2017) |
|---|---|---|---|

EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS

**EXHIBIT A -11**

| Form **886-A**<br>(May 2017) | Department of the Treasury - Internal Revenue Service<br>**Explanation of Items** | Schedule number or exhibit |
|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

compensation as defined in section 3231(e) of the Code. Section 2301(c)(5)(B) of the CARES Act provides that "wages" include amounts paid by an eligible employer to provide and maintain a group health plan (as defined in section 5000(b)(1) of the Code), but only to the extent that the amounts are excluded from the gross income of employees by reason of section 106(a) of the Code. Amounts treated as wages under section 2301(c)(5)(B) of the CARES Act are treated as paid with respect to any employee (and with respect to any period) to the extent the amounts are properly allocable to the employee (and to the period), and, except as otherwise provided by the Secretary of the Treasury (Secretary), the allocation will be treated as proper if made on the basis of being pro rata among periods of coverage. References to "allocable qualified health plan expenses" or "qualified health plan expenses" in this notice are to the health plan expenses described in section 2301(c)(5)(B) of the CARES Act.

The term "wages" is defined in section 3121(a) for FICA purposes as all remuneration for employment, with certain specific exceptions.

Sections 3101 and 3111 impose FICA taxes on "wages," as that term is defined in section 3121(a), with respect to "employment," as that term is defined in section 3121(b). FICA taxes consist of the Old-Age, Survivors and Disability Insurance tax (social security tax) and the Hospital Insurance tax (Medicare tax). These taxes are imposed on both the employer and employee.

Section 2301(f) of the CARES Act provides that the employee retention credit does not apply to the Government of the United States, the government of any State or political subdivision thereof, or any agency or instrumentality of those governments. Accordingly, these entities are not eligible employers.

I.R.C. § 3121(a) Wages — For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash with certain specific exceptions.

I.R.C. § 3121(b) Employment — For purposes of this chapter, the term "employment" means any service, of whatever nature, performed (A) by an employee for the person employing him, irrespective of the citizenship or residence of either, (i) within the United States, or (B) outside the United States by a citizen or resident of the United States as an employee for an American employer, or (C) if it is service, regardless of where or by whom performed, which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 233 of the Social Security Act; except that such term shall not include—

I.R.C. § 3121(b)(10) —service performed in the employ of—
  (A) a school, college, or university, or
  (B) an organization described in section 509(a)(3) if the organization is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of a school, college, or university and is operated, supervised, or controlled by or in connection with such school, college, or university, unless it is a school, college, or university of a State or a political subdivision thereof and the services performed in its employ by a student

**EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS**  **EXHIBIT A -12**

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number *(last 4 digits)* | Year/Period ended |

referred to in section 218(c)(5) of the Social Security Act are covered under the agreement between the Commissioner of Social Security and such State entered into pursuant to section 218 of such Act;

if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university

**Government Position:**

It is the government's position that the taxpayer is not entitled to claim the Employee Retention Credit (ERC) while they are an eligible employer their claim to be eligible based on partial shutdown due to governmental orders has not been substantiated.

**Taxpayer's Position:**

The taxpayer claimed that government orders related to Covid-19 had a significant impact on its business claimed entitlement to ERC as result of a full or partial suspension of its business operations.

**Conclusion:**

The ERC was designed to encourage employers to keep employees on their payroll through a refundable employment tax credit during periods when the employer's trade or business was partially shutdown. The taxpayer did not establish that a full or partial suspension of its operations due to a governmental order related to Covid-19 more than nominally impacted their business.

Therefore, the taxpayer's claim for ERC for the calendar quarter ending March 31, 2021, is disallowed in full.

Catalog Number 20810W
2017)

Page 11 of 12

www.irs.gov

Form **886-A** (Rev. 5-

EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS

**EXHIBIT A -13**

| Form **886-A** (May 2017) | Department of the Treasury - Internal Revenue Service **Explanation of Items** | | Schedule number or exhibit |
|---|---|---|---|
| Name of taxpayer | | Tax Identification Number (last 4 digits) | Year/Period ended |

## Exhibit 1- Issue 6
## 2021 Wages/Benefits Subject to FICA Taxes

| Employee Name | Q1: 01/01/2021 - 03/31/2021 | Q1 ERC | Q2: 04/01/2021 - 6/30/2021 | Q2 ERC | Q3: 07/01/2021 - 9/30/2021 | Q3 -ERC |
|---|---|---|---|---|---|---|
| AIDA S. GARCIA | $29,030.31 | $10,000.00 | $29,224.69 | $10,000.00 | $30,502.92 | $10,000.00 |
| AIRA-ANNE S. NUCUP | 23,893.92 | 10,000.00 | 26,297.96 | 10,000.00 | 26,042.82 | 10,000.00 |
| ALINA A. NUNO | 23,456.34 | 10,000.00 | 24,003.86 | 10,000.00 | 25,280.93 | 10,000.00 |
| ANDREW C. BUECHELE | 18,950.31 | 10,000.00 | 21,218.91 | 10,000.00 | 23,691.54 | 10,000.00 |
| ANDY PAUL R. TECSON | 17,188.29 | 10,000.00 | 17,188.29 | 10,000.00 | 18,778.23 | 10,000.00 |
| ANGELA R. NERI | 18,858.06 | 10,000.00 | 18,858.09 | 10,000.00 | 19,748.19 | 10,000.00 |
| ARLINE D. MCGOWAN | 7,728.34 | 7,728.34 | 1,411.66 | 1,411.66 | 0.00 | 0.00 |
| BRADI L ZAPATA | 0.00 | 0.00 | 0.00 | 0.00 | 18,702.26 | 10,000.00 |
| BRIANNA LEWIS | 0.00 | 0.00 | 0.00 | 0.00 | 8,206.16 | 8,206.16 |
| CHELSEA A. CULLUM | 16,659.99 | 10,000.00 | 17,377.75 | 10,000.00 | 18,306.15 | 10,000.00 |
| CHRISTIAN RODRIGUEZ | 2,658.88 | 2,658.88 | 14,524.95 | 10,000.00 | 16,228.37 | 10,000.00 |
| DANIELA GONZALEZ | 0.00 | 0.00 | 0.00 | 0.00 | 9,442.08 | 9,442.08 |
| DANIELLE L. SAGUIL | 23,456.34 | 10,000.00 | 25,821.26 | 10,000.00 | 27,012.39 | 10,000.00 |
| ELGIN B. SALAGUBANG | 23,456.37 | 10,000.00 | 25,821.26 | 10,000.00 | 26,049.12 | 10,000.00 |
| ELISA A RUPPERT | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| IMELDA G. GONZALEZ | 17,766.15 | 10,000.00 | 18,163.91 | 10,000.00 | 19,491.75 | 10,000.00 |
| IRENE THAI | 7,308.39 | 7,308.39 | 7,308.39 | 7,308.39 | 9,605.19 | 9,605.19 |
| JACQUELINE ROBERTSON | 19,510.02 | 10,000.00 | 21,489.76 | 10,000.00 | 0.00 | 0.00 |
| JAMIE M. GARCIA | 21,062.22 | 10,000.00 | 21,292.47 | 10,000.00 | 23,282.93 | 10,000.00 |
| JASMINE R BOLANOS | 13,291.83 | 10,000.00 | 18,988.35 | 10,000.00 | 20,128.71 | 10,000.00 |
| JENNIFER NIEVES | 0.00 | 0.00 | 0.00 | 0.00 | 18,685.22 | 10,000.00 |
| JULIETA DA SILVA | 17,089.59 | 10,000.00 | 18,463.92 | 10,000.00 | 21,499.80 | 10,000.00 |
| KARINA FERNANDEZ | 12,770.93 | 10,000.00 | 10,211.67 | 10,000.00 | 0.00 | 0.00 |
| LUKE N. EVANS | 21,105.06 | 10,000.00 | 21,597.82 | 10,000.00 | 0.00 | 0.00 |
| MARISSA L. GARCIA | 10,925.11 | 10,000.00 | 756.57 | 756.57 | 0.00 | 0.00 |
| NATASHA DUNNELLS | 17,766.09 | 10,000.00 | 19,157.38 | 10,000.00 | 19,491.72 | 10,000.00 |
| NELIA MALIHAN | 19,852.68 | 10,000.00 | 19,852.68 | 10,000.00 | 0.00 | 0.00 |
| NORMA A. GUERRERO | 41,800.02 | 10,000.00 | 41,800.02 | 10,000.00 | 43,349.46 | 10,000.00 |
| STEVEN GLORIA | 0.00 | 0.00 | 383.01 | 383.01 | 0.00 | 0.00 |
| SUSANA E. MARTINEZ | 14,666.19 | 10,000.00 | 15,486.40 | 10,000.00 | 0.00 | 0.00 |
| TROY J. MACHADO | 33,825.96 | 10,000.00 | 37,328.60 | 10,000.00 | 37,054.89 | 10,000.00 |
| VEASNA S MOEUN | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| VENEETA S. CHAN | 29,005.89 | 10,000.00 | 33,794.18 | 10,000.00 | 19,470.87 | 10,000.00 |
| WADE F ASCHBRENNER | 25,035.42 | 10,000.00 | 25,035.45 | 10,000.00 | 51,771.66 | 10,000.00 |
| WILLIAM Q BERRY | 21,760.02 | 10,000.00 | 24,045.52 | 10,000.00 | 26,478.60 | 10,000.00 |
| YI KAM LAW | 31,854.18 | 10,000.00 | 31,854.18 | 10,000.00 | 8,307.51 | 8,307.51 |
| **Total** | **$581,732.90** | **$277,695.61** | **$608,758.96** | **$269,859.63** | **$586,609.47** | **$255,560.94** |

EXHIBIT B - IRS DISALLOWANCE LETTER & EXPLANATION OF ITEMS        EXHIBIT A -14